*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KYLE BRANDON RICHARDS,

Plaintiff-Appellant,

v

FOX TELEVISION STATION, A AND E
TELEVISION STATION, ABC TELEVISION
STATION, ADULT SWIM TELEVISION
STATION, AMC TELEVISION STATION, BET
TELEVISION STATION, BRAVO TELEVISION
STATION, CBS TELEVISION STATION,
CENTRIC TELEVISION STATION, CMT
TELEVISION STATION, COMEDY CENTRAL
TELEVISION STATION, E-ENTERTAINMENT
TV TELEVISION STATION, FREEFORM
TELEVISION STATION, FX TELEVISION
STATION, LIFETIME TELEVISION STATION,
MTV TELEVISION STATION, NATIONAL
GEOGRAPHIC CHANNEL, NBC TELEVISION
STATION, PBS TELEVISION STATION, SYFY
TELEVISION STATION, TBS TELEVISION
STATION, TCM TURNER CLASSIC MOVIES
TELEVISION STATION, TLC TELEVISION
STATION, TNT TELEVISION STATION, TRUE
TV/TRU TV TELEVISION STATION, TVLAND
TELEVISION STATION, UNIVISION
TELEVISION STATION, USA TELEVISION
STATION, VH1 TELEVISION STATION, WGN
TELEVISION STATION,

Defendants-Appellees.

UNPUBLISHED
January 23, 2020

No. 347077
Washtenaw Circuit Court
LC No. 18-000122-CP

Before: MARKEY, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

-1-

Kyle Brandon Richards is a prisoner at the Baraga Correctional Facility. Richards filed suit against a laundry list of television networks, raising several challenges to their daytime censorship policies. The circuit court clerk's office dismissed Richards's action for lack of progress. Richards now appeals, contending that the court should have appointed a process server and counsel to assist him and should have permitted alternative service based on his status as a prisoner. The circuit court was required to take none of these actions to assist the imprisoned plaintiff in his private lawsuit. We affirm.

## I. BACKGROUND

On February 1, 2018, Richards filed a lawsuit against several television networks. The circuit court waived Richards's filing fees and costs based on his indigency. In his complaint, Richards requested " 'alternate service' by appointing a process server" because "defendants['] 'full buisness [sic] names' and 'addresses' are unknown to plaintiff." He contemporaneously filed a motion for alternative service, noting "Plaintiff is a prisoner, with no access to telephone, internet, or other 'information technology' needed to locate defendants['] address[es]." He asserted that he "tried to serve process on this defendant as described" but: "I do not know defendants['] address[es] and have no means to serve them even if I did. Even if defendants['] addresses were verified, I would be pre-empted from executing service by PD 05.03.118(U)." The policy directive provided all relevant times that "[a] prisoner is prohibited from sending mail addressed to anyone who has objected to receiving mail from the prisoner." Michigan Department of Corrections, Prisoner Mail, PD 05.03.118 (November 1, 2017), p 4, available at <https://www.michigan.gov/documents/corrections/ 05_03_118_PD_607248_7.pdf> (accessed December 6, 2019).[1] Richards misquoted the policy directive as "prohibit[ing] a prisoner from writing a person or entity that has not consented to be contacted by a prisoner."

In any event, Richards requested that the court appoint a process server to assist him as such individual "could easily locate defendants['] current address[es] online and serve them by U.S. Mail or fax, in only a few seconds," whereas Richards complained, the prisoner mail policy "pre-empted" him from accomplishing service. In support of his request, Richards cited MCL 600.1811(1), which provides, "The judge of any circuit court of this state may in any suit or proceeding commenced or pending therein, on the application of any party thereto, appoint some disinterested person to serve any process or other papers . . . ." Richards further relied upon MCR 2.002(F), actually (E), and MCR 2.105(I) to assert that the court could "appoint a process server, without charge to plaintiff" as he was "indigent and unable to execute service himself." MCR 2.002(E) provides, "If an individual shows by that he or she is unable because of indigence to pay fees, the court shall order those fees waived." And MCR 2.105(I) states:

**Discretion of the Court.**

---

[1] The policy directive was amended effective March 1, 2018. Subsection (U) was not altered by this amendment.

(1) On a showing that service of process cannot reasonably be made as provided by this rule, the court may by order permit service of process to be made in any other manner reasonably calculated to give the defendant actual notice of the proceedings and an opportunity to be heard.

(2) A request for an order under the rule must be made in a verified motion dated not more than 14 days before it is filed. The motion must set forth sufficient facts to show that process cannot be served under this rule and must state the defendant's address or last known address, or that no address of the defendant is known. If the name or present address of the defendant is unknown, the moving party must set forth facts showing diligent inquiry to ascertain it. A hearing on the motion is not required unless the court so directs.

(3) Service of process may not be made under this subrule before entry of the court's order permitting it.

No order from the court resolving Richards's request for alternate service appears in the record. On March 23, 2018, Richards completed the "proof of service" section of the summons and complaint. Richards listed the various defendants' addresses as "unknown." He swore that he made "a 'diligent' effort to ascertain" these addresses. He relied upon his motion for alternate service. If that motion were denied, Richards "kindly ask[ed] the court [to] kindly notify by 'phone' or 'email', all defendants of the preceedings [sic] against them," emphasizing that these "methods are free, fast, and efficient."

On March 26, Richards attempted to file a request for a hearing on his motions, stating "The plaintiff requests to appear via video conference, at <u>any</u> time convenient for the court. Please schedualle [sic] for any time soon, that is convenient for both the court and the prison. (Writ not required.)" This motion was not accepted for filing until May 8. And on April 2, 2018, Richards renewed his motion for alternate service. Again, the court did not issue an order resolving the motion. It appears that instead of submitting the motions to the judge, the court clerk's office returned them to Richards. On April 25, Richards submitted a "notice to the clerk," indicating that the clerk's office had returned his hearing request "instructing me to contact central assignment." That return of pleadings is not listed in the lower court register of actions, nor is it in the lower court file. Richards advised the court that "as a prisoner, [he did] not have telephone access or standing to schedualle [sic] a video conference hearing." He asked that "central assignment" schedule a video hearing and notify him of the date and time.

Also on April 25, Richards renewed his motion for a hearing, but the court did not accept this motion for filing until May 31. In that motion, Richards stated, "Please schedualle [sic] for any available date and time convenient for the court. Do not instruct me to contact the central assignment clerk, as I am a prisoner and cannot arrange such dealings myself." And he filed a motion for class certification in which he requested the appointment of counsel. He asserted that the court had discretion to appoint counsel in this civil case under MCR 8.123 because the issues were complex and Richards, as an imprisoned plaintiff, did not have the ability "to investigate facts, gather evidence and prosecute the case" without assistance.

The court addressed none of these motions or notices. However, Richards attached to his appellate brief correspondence from the judge's office that was not included in the lower court record. Specifically, on May 8, 2018, Washtenaw Circuit Court Judge Timothy Connors's "judicial coordinator" notified Richards by letter:

> Motions that are filed have to be scheduled by the moving party and a hearing will be held in Judge Connors'[s] courtroom. We hear civil matters at 9:00 a.m. on Thursdays. The Court does not appoint attorneys to represent people in civil matters so you will have to hire your own lawyer to appear for the motions you want heard. You will not be transported from prison to Washtenaw County for a civil case.
>
> If you should have any questions, please feel free to contact me at . . . .

On May 22, 2018, Richards filed a "petition for emergency hearing and request to expedite ruling." He indicated that he had "dilligently [sic] attempted to schedualle [sic] a 'hearing' for 3 pending motions" but that "Central assignment 22nd circ. will not answer inmate[']s 'collect' calls, and prisoner cannott [sic] afford debit call." Richards noted that he was indigent and could not afford an attorney. He further noted that he had written to the "central assignment office" regarding his several hearing requests and yet "received no response." He threatened, "Plaintiff is prepared to file a tenure complaint against the office of" the circuit court judge assigned to the case.[2] This complaint would be based on the circuit court's failure to rule on his two earlier alternative service motions. (Petition, p 2.) The court made no response to Richards's request for a hearing.

Following this flurry of activity, Richards fell silent. On September 4, 2018, the Washtenaw Circuit Court's clerk's office issued a notice of intent to dismiss Richards's case within 28 days as "[n]o steps or proceedings appear to have been taken in this matter in 91 days." (Notice of Intent to Dismiss for No Progress, September 4, 2018 LCF.) The court clerk thereafter dismissed the action on October 22, 2018, as follows:

ORDER TO DISMISS

☐ 1. The court records disclose that defendant(s)/respondent(s) have not been timely served with process according to court rule

☒ 2. Progress has not occurred as specified in the notice of intent to dismiss.

IT IS ORDERED that this case is dismissed without prejudice as to:
☒ all parties
☐ the following defendant(s)/respondent(s):

---

[2] Richards signed his petition on May 22, and it was more promptly accepted by the court for filing than his previous motions.

Richards filed a motion to set aside the dismissal, but the court made no response. He noted that he did not have access to the electronic means to discover the defendants' addresses and that he could not serve defendants by certified mail as that resource was not available in the prison. Richards complained that he did not receive any notice that his case was in danger of dismissal until November 20. He further complained that his various motions "sat on the docket until long after the summons expired. In fact, they still have not been ruled on." Richards asked the court to set aside the dismissal and rule on his motions for alternate service and a hearing.

Richards now appeals.

## II. ANALYSIS

It is important to note from the outset that although Richards is a prisoner, his civil lawsuit has nothing to do with his imprisonment, not even tangentially. His lawsuit is a completely private matter against a group of television networks based on their purported policies of censoring sexually explicit material. Accordingly, no protections or duties provided in the prisoner litigation reform act, MCL 600.5501 *et seq.*, apply in this case. Moreover, as this case is not a domestic relations action and does not involve "minor children," the protections for incarcerated parties under MCR 2.004 do not apply.

The circuit court ultimately dismissed Richards's action for lack of progress. We review that decision for an abuse of discretion. *Bolster v Monroe Co Bd of Rd Comm'rs*, 192 Mich App 394, 399; 482 NW2d 184 (1991). MCR 2.502(A)(1) provides that a court may dismiss "an action in which no steps or proceedings appear to have been taken within 91 days. . . ." Although 91 days had elapsed since Richards's last motion, this problem was caused by the circuit court's failure to resolve Richards's various motions. We cannot condone the circuit court's lack of response. However, any error was harmless. A circuit court may also dismiss an action for failure to serve the defendants. MCR 2.102(E); MCR 2.504(E). Richards did not serve the defendants named in his complaint. And Richards was not entitled to the relief he requested to enable service.

State courts must make certain allowances for indigent parties. MCR 2.002 provides for the waiver of certain fees for indigent parties. MCR 2.002(A)(2) provides that its provisions governing the waiving of fees for indigent persons "applies only to fees required by MCL 600.857, MCL 600.880, MCL 600.880a, MCL 600.880b, MCL 600.880c, MCL 600.1027, MCL 600.1986, MCL 600.2529, MCL 600.5756, MCL 600.8371, MCL 600.8420, MCL 700.2517, MCL 700.5104, and MCL 722.717." The cited statutes cover jury fees, filing fees, and certain fees connected with probate court and paternity actions. Richards received the benefit of MCR 2.002 as the court waived his filing fees, allowing him to submit his complaint and many motions free of charge.

MCR 2.002(H) provides that "[i]f payment of fees has been waived for an individual and service of process must be made by an official process server or by publication," the court may order the local funding unit to foot those costs as well. Unfortunately for Richards, he asked for more than what the court was required to provide; he wanted the court or a court-appointed process server to do the work of locating the defendants' proper service information, not simply to serve process.

MCR 2.103(A) provides that "[p]rocess in civil actions may be served by any legally competent adult who is not a party or an officer of a corporate party." Richards could have asked any friend, relative, or acquaintance to serve process for him free of charge. Richards could have had any friend, relative, or acquaintance use the Internet to find the individuals designated by the defendants to accept legal service on their behalves. But, as federal courts have recognized, it is the duty of a plaintiff, even an indigent and imprisoned plaintiff, to do the initial work of gathering sufficient information for court-appointed process servers to effectuate service. See *Walker v Sumner*, 14 F3d 1415, 1421-1422 (CA 9, 1993) (holding that a prisoner failed to show cause why his claims against a prison official should not be dismissed under FRE 4(m) where the prisoner failed to show "that he provided the marshal with sufficient information to serve [the defendant]"); *Pierce v Woodford*, 416 Fed Appx 660, 661 (CA 9, 2011) (holding that the district court did not abuse its discretion in dismissing the plaintiff's claims for failure to serve the summons and complaint within 120 days "because [the plaintiff] failed to provide the necessary information to help effectuate service"). Accordingly, even if the circuit court had appointed a process server to assist Richards, that server would not have been required to investigate and peform research on Richards's behalf and would have been unable to effectuate service based on the information given.

Richards requested to employ an alternate service method; specifically, to have the circuit court notify the 30 defendants of the lawsuit by email or telephone. We review for an abuse of discretion the court's implicit denial of that motion. See MCR 2.105(I)(1). Again, Richards asked for more than permitted by law. Even assuming that service could be effectuated by email or telephone in this case, Richards expected the court to first find the contact information for the 30 defendants. This is not required under the alternate service court rule.

Richards also challenges the circuit court's failure to appoint counsel to represent him. However, Richards's was a run-of-the-mill civil action not involving the deprivation of any physical liberty or fundamental constitutional right. Court-appointed counsel therefore was not in order.

Neither the Sixth nor the Fourteenth Amendments provide a right to appointed counsel in civil matters. See *Turner v Rogers*, 564 US 431, 441-443; 131 S Ct 2507; 180 L Ed 2d 452 (2011). Exceptions have been carved out for cases where the losing party faces the possibility of a loss of physical liberty, such as in civil contempt proceedings. *Id*. at 442-443; see also *Mead v Batchlor*, 435 Mich 480, 498; 460 NW2d 493 (1990). Appointed counsel is required in paternity proceedings, *Artibee v Cheboygan Circuit Judge*, 397 Mich 54; 243 NW2d 248 (1976), and in cases where parental rights may be terminated. *In re Williams*, 286 Mich App 253, 275-276; 779 NW2d 286 (2009). But such actions involve the potential loss of fundamental constitutional rights.

In his request for appointed counsel, Richards contended that he was entitled to appointed counsel under MCR 8.123 given "the complexity of the case and legal issues involved" and "the ability of plaintiff to investigate facts, gather evidence and prosecute the case." The court rule does not support the appointment of counsel simply because the litigation may be complex. It is not the burden of the court-appointed counsel system or the taxpayers of this state to fund counsel for any potential indigent plaintiff, regardless of the triviality of the rights at stake.

Moreover, Richards cannot establish any prejudice as the result of the dismissal of his lawsuit. The court dismissed the action without prejudice. Richards is free to refile his complaint and secure private legal assistance or private assistance to research and ultimately serve process on the many named defendants.

Given our resolution of these issues on appeal, we need not reach Richards's challenges based on the substance of his claims.

We affirm.


/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly